IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

**DARIUS ISHUN GREEN**  )
          )
  Plaintiff,    )  Civil Action No.:_____
v.         )
          )
WARDEN **BRAD HOOKS**,  )
DEPUTY WARDEN **JOHN BROWN**; )
LEIUTENANT **TORIE GRUBBS**, )
**AND**        )
**JOHN DOE**      )
          )
          )
          ) **JURY TRIAL DEMANDED**
Defendants.     )

## COMPLAINT

Plaintiff ("Green") files this Complaint for all permissible damages, by using 42 U.S.C. §§ 1983 and 1988 as vehicles to vindicate Green's rights under the Eighth Amendment and Fourth Amendment of the U.S. Constitution, because Defendants violated Green's constitutional right to be free from cruel and unusual punishment. To support this Complaint, Green alleges the following:

## PRELIMINARY STATEMENT

Defendant Grubbs's conduct is an absolute affront to the protections afforded by our U.S. Constitution to incarcerated human beings. At the time of this incident, Grubbs knew that Green was a transgender inmate with fully developed female body parts, who should have never been placed in a "protective custody cell" with

a known rapist such as Ms. Green's assailant. Grubbs knew that Green had been sexually assaulted by a particular inmate and had been begging to be placed in protective custody. Nevertheless, *in a sick twist*, Grubbs placed Green in an alleged "protective-custody" cell with the very inmate who had been sexually assaulting Green.  See Matthews v. Crosby 480 F. 3d 1265, 1270 (11th Cir.2007) (citing Farmer v. Brennan 511 U.S. 825, 114 S. Ct. [1970])(stating, "[i]n its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive physical force against prisoners … [because] …[b]eing violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society.")

Defendants Hooks and Brown also knew that Green was a transgender inmate almost immediately upon Green's arrival to the prison; both Hooks and Brown met with Green and thus were informed directly and indirectly that Green was transgender; plus, Green's mother had communicated Green's transsexual status and the fact that Green's life was in danger *while Green remained in general population*. At the time of the subject incident(s), Green's constitutional right to be free from the type and extent of cruel and unusual punishment Green experienced was clearly established.

## JURISDICTION

### 1.

Jurisdiction is proper and based upon 28 U.S.C. §§ 1331, 1332, and 1343.

## VENUE

### 2.

Venue is proper and based upon 28 U.S.C. § 1391. Also, the events or omissions related to Green's claims arose in Tattnall County, GA at Rogers State Prison. See L.R. 3.4.

## PARTIES

**A. Green**

### 3.

At all times relevant to this Complaint, Green was a citizen of the United States, residing in Georgia. Green submits to the jurisdiction and venue of this Court; thus Green files this action under federal law for all general, special, compensatory, punitive, and any other permissible damages.

**B. Defendants**

### 4.

Warden Brad Hooks ("Hooks") was at all times relevant to this action employed by the Georgia Department of Corrections ("GDC") as the Warden of Rogers State Prison. Prior to Green being placed in general population at Rogers State Prison, Hooks knew that Ms. Green was transgender with developed (patently noticeable) female body parts and other features. Further and significantly, Hooks also knew that the door on Green cell was not locked at night

and thus would subject Green to sexual predators such as Green's assailant—who all Defendants knew was in prison for sexual assault.

Further, prior to green being placed in a "protective-custody" cell with her sexual assailant, Green's mother placed Hooks on notice that Green's life was in danger while Green was in general population with known rapist. Additionally, Green wrote Hooks a letter informing him about prison conditions that placed transgender inmates such as Green in substantial risk of bodily harm.

At all times relevant to this Complaint, Hooks was acting under color of law, and was responsible for knowing all relevant policies, procedures, rules, regulations of the DOC with respect to transgender inmates and vulnerable inmates, and Hooks was also responsible for knowing all precedential law of the Eleventh Circuit Court of Appeal and the U.S. Supreme Court, as it applies to the U.S Constitution with respect to transgender inmates. Hooks is being sued in his individual capacity and may be served at 290 Donovan-Harrison Road, Wrightsville, GA 31906.

5.

Lieutenant Grubbs ("Grubbs') at all times relevant to this action was a correctional officer at Rogers State Prison who was also employed by GDC.  Prior to placing Green in a "protective-custody" cell, Grubbs knew that Green was transgender because he read her request for protective custody and he spoke to Green. Nevertheless Grubbs had Green placed in a cell with her sexual assailant and notably, ***Green saw Grubbs talking to her assailant*** shortly prior to Green

being placed in a "protective-custody" cell with the very assailant Grubbs had
previously been talking to. At the time that Grubbs had Green placed in the subject
cell with her sexual assailant, Grubbs had the authority to prevent Green's
placement in that cell—yet chose not to exercise that authority.

At all times relevant to this Complaint, Grubbs was acting under color of law,
and was responsible for knowing all relevant policies, procedures, rules,
regulations of the DOC with respect to transgender inmates and vulnerable
inmates, and Grubbs was also responsible for knowing all precedential law of the
Eleventh Circuit Court of Appeals and the U.S. Supreme Court, as that law applies
to the U.S Constitution with respect to transgender and vulnerable inmates. Grubbs
is being sued in his individual capacity and may be served at 1978 GA HWY 147,
Reidsville, GA 30453.

6.

Deputy Warden of Security John Brown ("Brown") was at all times relevant to
this action employed by the Georgia Department of Corrections ("GDC") and the
Deputy Warden of Security for Rogers State Prison. Prior to Green being placed in
general population at Rogers State Prison, Brown knew that Green's life was in
danger while Green was in general population, evidenced by the fact that Brown
knew that Green's mother had stated Green's life was in danger. Brown also knew
Green was being sexually assaulted because Brown read a letter from Green in
which Green advised Brown that he was being sexually assaulted while Green was
in general population.  On top of the fact all that knowledge, Brown, as  Deputy
Warden of Security, should have absolutely known and had a duty to know about

the placement of a transgender inmate in general population with rapist and other closed security inmates. Further and significantly, Brown also knew that the door on Green cell was not locked at night and thus would subject transgender Green to sexual predators such as Green's assailant—who all Defendants knew was in prison for sexual assault.

At all times relevant to this Complaint, Hooks was acting under color of law, and was responsible for knowing all relevant policies, procedures, rules, regulations of the DOC with respect to transgender inmates and vulnerable inmates, and Hooks was also responsible for knowing all precedential law of the Eleventh Circuit Court of Appeal and the U.S. Supreme Court, as it applies to the U.S Constitution with respect to transgender inmates. Hooks is being sued in his individual capacity and may be served at 1978 GA HWY 147, Reidsville, GA 30453.

7.

John Doe at all times relevant to this action was an officer at Rogers State Prison who was also employed by GDC.  Foremost, discovery can reveal the exact identity of John Doe because he is the specific correctional officer who transported Green—upon command of Grubbs—to the protective custody cell where Green's assailant was waiting to further sexually assault Green. Prior to transporting Green to the subject cell, John Doe talked to Green and knew that he was transporting Green to protective custody because of her transgender status. John doe also knew that the inmate waiting for Green was Green's sexual assailant; nevertheless, John Doe did nothing to prevent Green from being placed in a "protective-custody" cell

6

with her known sexual assailant.  John Doe failed to report that situation to any higher ranking official and thus condoned and tolerated a known sexual assault.

At all relevant to this Complaint, John Doe was acting under color of law, and was responsible for knowing all relevant policies, procedures, rules, regulations of the DOC with respect to transgender inmates and vulnerable inmates, and Grubbs was also responsible for knowing all precedential law of the Eleventh Circuit Court of Appeals and the U.S. Supreme Court, as that law applies to the U.S Constitution with respect to transgender and vulnerable inmates. John Doe is being sued in his individual capacity and may be served at 1978 GA HWY 147, Reidsville, GA 30453.

### RELEVANT FACTS

8.

Upon arrival at Rogers State Prison, and before Green was placed in general population, Brown knew Green was transgender.

9.

Before Green was placed in general population at Rogers State Prison, Brown knew Green had female body parts such as breast.

10.

Before Green was placed in general population at Rogers State Prison, Hooks knew Green was transgender.

11.

At all relevant times to this Complaint, Brown, Hooks, and Grubbs knew

that Rogers State Prison housed closed security inmates.

12.

At all relevant times to this Complaint, Brown, Hooks, and Grubbs knew Rogers State prison housed convicted rapist in general population.

13.

At all relevant times to this Complaint, Brown, Hooks, and Grubbs knew Rogers State Prison housed convicted murderers in general population.

14.

At all relevant times to this Complaint, Brown, Hooks, and Grubbs knew Rogers State Prison housed sexual offenders.

15.

At all relevant times to this Complaint, Brown, Hooks, and Grubbs knew Rogers State Prison housed convicted murderers and inmates convicted of felony crimes such aggravated battery and aggravated assault.

16.

While Green was in general population, Brown attended a meeting with Green and Hooks regarding Green's safety in general population; nevertheless, Brown approved of Green going back into general population, and knew that after said meeting, Green was sent back to general population.

17.

While Green was in general population, Hooks met with Green regarding Green's safety in general population; nevertheless, Hooks approved of Green going back into general population, and knew that after said meeting, Green was sent back to general population.

18.

While Green was in general population at Rogers State Prison, Hooks knew of an alleged complaint by Green's mother that Green life was in danger. At the moment Hooks was informed that Green's life was in danger, Hooks also knew Green was a transgender inmate and that Roger State Prison housed sexual offenders and other violent criminals. Despite all this knowledge, Hooks permitted Green to remain in general population where Green continued to be both sexually assaulted and under a known threat of substantial harm to her physical safety; Hooks showed deliberate indifference.

19.

While Green was in general population at Rogers State Prison, Hooks never took any reasonable steps to ensure that the substantial risk to Green's safety was reasonably abated.

20.

While Green was in general population at Rogers State Prison, Brown knew of an alleged complaint by Green's mother that Green's life was in danger. This knowledge, coupled with the knowledge that transgender Green was in general population with sexual offenders and other violent, closed security inmates, was enough for Brown to know that Green should have no have been where Green was being housed. Brown failed to take immediate, reasonable action. Despite all this knowledge, Brown permitted Green, a known transgender inmate, to remain in general population where Green continued to be sexually assaulted and also continued under a known threat of substantial harm to Green's physical safety; Hooks showed deliberate indifference.

21.

While Green was in general population at Rogers State Prison, Brown knew of an alleged complaint made by Green's mother that Green's life was in danger.

22.

While Green was in general population at Rogers State Prison, Brown read a letter addressed to him, from Green, in which Green notified Brown that Green was being sexually assaulted. Brown took no immediate, reasonable steps to address the issues he read about in Green's letter, so Green continued to be sexually assaulted.

23.

While Green was in general population at Rogers State Prison, Brown as deputy warden of security knew that Green's cell door was unsecured and thus inmates had the continual opportunity to enter Green's cell. Brown knew this about Green's cell door during the entire time green was in general population, including the period after Brown gained knowledge that green life was in danger and that Green was being sexually assaulted.

24.

While Green was in general population at Rogers State Prison, Hooks knew that Green's cell door was unsecure at night, or any other time, and thus inmates could enter Green's cell (and other cells as well), unsolicited. Hooks knew this about Green's cell door during the entire time Green was in general population, including the period after Hooks gained knowledge that Green's life was in danger and gained knowledge that the prison design placed the lives of transgender inmates in danger of being grave bodily such as that experienced by Green.

25.

While Green was in general population at Rogers State Prison, Hooks knew that the prison design posed a serious threat to Green's physical safety because Hooks read a letter from Green that warned of impending physical harm to Green and other transgender/vulnerable inmates because of the subject prison design,

including the fact that Green's cell door (and other cell doors) were unsecure because the lock on the subject cell doors was not secured, and thus inmates could enter Green's cell (and other cells as well), unsolicited. Despite all this knowledge, Hooks permitted Green to remain in general population where Green continued to be sexually assaulted and also continued under a known threat of substantial harm to Green's physical safety; Hooks showed deliberate indifference.

26.

While Green was in general population at Rogers State Prison, and in his capacity as Deputy Warden of Security, Brown knew that Green's cell door (and other cell doors) were unsecure at night, or any other time, and thus inmates could enter Green's cell (and other cells as well), unsolicited.

27.

While Green was in general population at Rogers State Prison, Grubbs knew that Green's cell door was unsecure at night, and thus inmates could enter Green's cell (and other cells as well), unsolicited,

28.

Grubbs was advised prior to Green being placed in protective custody in September 2012 that Green was a transgender inmate.

29.

Prior to Green being placed in protective custody in September 2012, Grubbs read Green's own handwriting that explained that Green was transgender and needed protective custody.

30.

Very shortly prior to Grubbs having Green placed in protective custody with her sexual assailant, Grubbs was seen talking to Green's sexual assailant.

31.

Grubbs had Green placed in a "protective-custody" cell with her sexual assailant while knowing that the sexual assailant would be waiting in the cell for Green. Grubbs knew the identity of Green's alleged sexual assailant prior to having Green placed in the cell with said assailant.

32.

John Doe knew that Green was transgender and that Green had requested protective custody because John Doe was advised of the reasons for transporting Green to protective custody.

33.

John Doe knew that he was transporting Green to a "protective-custody" cell that had Green's assailant waiting for Green. John Doe made Green go into a cell with her assailant, who John Doe knew was the very person Green was trying to

escape from.

34.

At all times relevant to this Complaint, all Defendants knew Green's assailant was a vice lord gang member.

35.

At all times relevant to this Complaint, all Defendants knew that Green's assailant was a convicted rapist.

36.

Green was raped while inside the 'protective-custody" cell that Grubbs and John Doe ensured Green was placed in.

37.

After being taken from the protective custody cell, and away from her rapist, Green had a physical examination which demonstrates that Green was anally penetrated. Prior to Green being raped by forced anal penetration, Green's assailant forced Green (against Green's will) to perform oral sex on multiple occasions ***and Brown knew this*** because he read a letter from Green that informed him about the forced oral sex. Brown nevertheless took no immediate, reasonable steps to protect Green.

38.

Upon arriving at Rogers State Prison, Green had already been classified as a high-risk sexual assault victim because Green was transgender. Hooks and Brown knew Green had been classified as a high-risk sexual assault victim during the entire time Green was in general population being sexually assaulted and during the time Green was being raped in "protective custody."

39.

Brown, Hooks, and Grubbs had a duty to know that Green was a high risk sexual assault victim because of Green's transgender identity.

## COUNT I

## VIOLATION OF EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND 42 U.S.C. § 1983
(*Against All Defendants*)

40.

Green  re-alleges in this Count, as if stated verbatim, all factual allegations in ¶¶ 4-39, and any other paragraph this Court deems applicable. Also, every fact and allegation in this Count supports Green's allegation that before and during various times Green was sexually assaulted, Green had a clearly established constitutional right to be free from cruel and unusual punishment in the form of Defendants deliberately ignoring the concrete and ***known risk*** of the very physical

injuries Green suffered, as well as Defendants ignoring the known physical injuries Green indeed did suffer.

41.

***Based on the incorporated facts in this Count***, Defendants, acting under the color of state law, violated Green's rights under the Eighth and Fourteenth Amendments to the United States Constitution by condoning and promoting unsafe prison conditions known to place transgender Green in substantial risk of physical injury; by showing deliberate indifference to actual physical injuries Defendants knew Green had suffered and thereby creating an environment that led to her actually being anally raped; and by showing deliberate indifference to Green being placed in a "protective-custody" cell with an inmate Defendants (at the very least Grubbs and John Doe) knew was Green's sexual assailant.

42.

Defendants' conduct directly and proximately caused Green to suffer significant physical and emotional injuries in an amount to be proven at trial.

43.

Defendants' conduct evidenced a willful, carefree disregard for Green's constitutional right to be free from cruel and unusual punishment. Consequently, Green is entitled to all permissible damages, including punitive damages. Punitive

damages are *essential* to deter future Eighth Amendment violations against transgender human beings within the GDC.

## COUNT II

### SUPERVISORY LIABILITY
(*Against Defendants Hooks, Brown And Grubbs*)

"Supervisory liability under 42 U.S.C. § 1983 occurs when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation." Matthews supra, at 1269- 70. The acts and omissions of all Defendants named in this Count proximately caused the deprivation of Green's clearly established constitutional right to be free from cruel and unusual punishment in the form of, inter alia, being beaten while handcuffed and non-resisting.

44.

Green re-alleges in this Count, as if fully stated verbatim, all factual allegations set forth in ¶¶ 4-40 , and any other paragraph that this Court deems applicable.

45.

***Based on the facts incorporated tot his Count***, Defendant Grubbs is potential liable under this Count because he had the supervisorial authority to prevent Green from being placed in a "protective-custody" cell with her sexual

17

assailant; yet, Grubbs deliberately chose to place Green in a cell with her sexual assailant and knew that the subject assailant had a history of sexual assaults that included previously assaulting Green. That means Grubbs took no reasonable steps to protect Green.

46.

**Based on the facts incorporated tot his Count**, Defendants Brown is liable under this Count also. Brown knew that Green was transgender; knew Green was in general population with sexual offenders; knew Green had reported in a letter to Brown that Green had been forced to perform oral sex; knew Green's Mother had reported that Green's life was in danger while Green was in general population; and knew that the lock on Green's cell door was not secure and thus Green was continually placed in danger of being sexually assaulted at night (which did happen). Yet, despite all Brown's knowledge, Brown took no reasonable step to protect Green during the time Green was being sexually assaulted in general population and the time Green was raped in "protective custody."

47.

**Based on the facts incorporated tot his Count**, Defendants Hooks is liable under this Count also. Hooks knew that Green was transgender; knew Green was in general population with sexual offenders; knew Green had reported to him that the prison's design created a substantial risk of physical violence to Green,

18

including the fact the lock on Green's cell door was not secure and thus placed

Green in danger of being sexually assaulted at night (which did happen); and knew

Green life was in danger while Green was in general population. Yet, despite all

Hook's knowledge, Hook took no reasonable step to protect Green during the time

Green was being sexually assaulted in general population and the time Green was

raped in "protective custody."

48.

Because Defendants Grubbs, Hooks, and Brown, acting in their supervisory

capacity, proximately caused Green's serious physical injuries, Green is entitled to

all permissible damages, including punitive damages. Punitive damages are

essential to deter future Eighth Amendment violations.

**COUNT III**

**CIVIL CONSPIRACY**
*(Against Defendants Grubbs and John Doe)*

To state a plausible claim for civil conspiracy under 42 U.S.C. § 1983, a

plaintiff must plead sufficient facts to reasonably infer that a Defendant reached an

understanding with another person to violate the plaintiff's constitutional rights;

the conspiratorial act must also "impinge" upon the plaintiff's constitutional right.

See Grider v. City of Auburn, Ala., 618 F 3d 1240, 1260 (11th Cir. 2010).

Significantly, Plaintiffs can prove civil conspiracy with circumstantial evidence.

Id. The assertive acts of Defendant Grubbs in this Count demonstrate that Grubbs

19

conspired to violate Green's clearly established constitutional right to be free from cruel and unusual punishment in the form of, inter alia, being placed in a cell with an inmate Grubbs knew would further sexually assault Green.

49.

Green re-alleges in this Count, as if fully stated verbatim, all factual allegations set forth in ¶¶ 5, 7, 30-36, and any other paragraph that this Court deems applicable.

50.

***Based on the incorporated facts into this Count***, Grubbs conspired with Green's sexual assailant and Hon Doe to have Green placed in a cell with the person both Grubbs and John Doe knew had sexually assaulted Green and knew would sexually assault Green again once Green was left in the "protective custody" cell alone with said sexual assailant. Grubbs spoke to the assailant just prior to having Green transported to the subject cell where Green's sexual assailant was waiting inside. Grubbs conduct was a shameless, depraved heart act, showing a callous disregard for the U.S Constitution and human dignity.

51.

## PUNTIVE DAMAGES AND ATTORNEY FEES

Defendants' conduct entitles Green to an award of punitive damage. Green also request reasonable attorney fees under all applicable laws.

20

Green now prays that this Court do the following:

    1. Assume jurisdiction over this action;

    2. Declare that the acts and omissions described in this Complaint

violated Green's clearly-established rights under the U.S. Constitution

and laws of the United States;

    3. Permit a jury of at least six (6) to decide all issues of fact that this

Court does not decide as a matter of law;

    4. Enter judgment in favor of Green- for all permissible damages

under law, including compensatory and punitive damages- against

each

defendant jointly and severally;

    5. Award Green all permissible costs under law regarding this lawsuit,

including reasonable attorney fees and expenses pursuant to 42 U.S.C.

§ 1988(b) & (c); and

    6. Order any additional relief that this Court deems appropriate.

Respectfully submitted this 8th day of May 2014,

                    s/MARIO WILLIAMS
                    Mario Williams
                    GA Bar No. 235254

WILLIAMS OINONEN, LLC
The Historic Grant Building
44 Broad Street, NW
Suite 200
Atlanta, GA 30303
Tel:   404-654-0288
Fax:   404-592-6225

mario@goodgeorgialawyer.com

Counsel For Green