# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# STATESBORO DIVISION

| | | |
|---|---|---|
| DARIUS ISHUN GREEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case: CV614-046 |
| | ) | |
| WARDEN BRAD HOOKS, | ) | |
| DEPUTY WARDEN JOHN BROWN, | ) | |
| LIEUTENANT TORIE GRUBBS, and | ) | |
| JOHN DOE, | ) | |
| | ) | |
| Defendants. | ) | |

## **ORDER**

Before the Court in this 42 U.S.C. § 1983 case are plaintiff Darius Green's two motions to compel and for sanctions, docs. 29 & 30; his[1] motions to depose inmates Joel Reid and Darryl Ricard, docs. 40 & 42; and a Consent Motion to extend the time within which defendants could respond to the first compel/sanctions motion. Doc. 44.[2]

Some background: Green, a transgendered ex-inmate of Rogers

---

[1] Green identifies as a female but remains physiologically male.

[2] Since the filing of the motion for extension, the GDOC has filed its response brief over no objection. Doc. 45. The motion therefore is **GRANTED**. Doc. 44.

State Prison (RSP), claims that he begged to be placed into protective custody after fellow-inmate Darryl Ricard repeatedly sexually assaulted him. Doc. 1 at 1-2. According to Green, Lieutenant Torie Grubbs had officer "John Doe" (real name unknown at this juncture) place Green into protective custody *with* Ricard, who then raped him. *Id.* at 2, 13-14. Green then filed this action against Grubbs and several other prison officials. Doc. 1. The district judge has since resolved six motions to dismiss filed by various groups of defendants. *See* docs. 68 & 78.[3]

Green moves the Court to compel a non-party, the Georgia Department of Corrections (GDOC), to provide discovery. Docs. 29 & 30. He claims that the GDOC's Fed. R. Civ. P. 30(b)(6) representative, Annettia Toby, was woefully unprepared and thus effectively failed to appear for the GDOC's deposition. Doc. 29. He also complains that the GDOC has failed to provide adequate response to some requests for production. Doc. 30.

## I.  30(b)(6) DEPOSITION

Green asserts that Toby, Deputy Warden of Security at RSP, was either unprepared or unable to provide knowledgeable answers to the

---

[3] Resolving the motions to dismiss eliminated Green's "failure to intervene" claims but left the bulk of this case intact, including the core § 1983 and § 1988 claims. *See* docs. 68 and 78.

following topics:

1. The identity, including the full name, of the department of corrections' employee (correctional guard or otherwise) who transported/escorted Plaintiff to the cell/room Plaintiff was placed in pursuant to Plaintiff's request for protective custody while at Rogers State Prison. If more than one person escorted Plaintiff to the subject cell/room then make sure you provide people who can testify about the identity, including the full name, of each person who transported/escorted Plaintiff to the cell/room Plaintiff was placed in pursuant to Plaintiff's request for protective custody while at Rogers State Prison;

2. The full name of the DOC employee who allowed Darryl Ricard (GDC # 1176425) to enter the same cell/room that Plaintiff was placed in pursuant to Plaintiff's request for protective custody while at Rogers State Prison; and

3. The current location of Darius Green and Darryl Ricard's isolation checklists.[4] I am referring to the checklist[s] that are represented by Ex. 1 to this subpoena. There should be a checklist with respect to the dates of September 21-22, 2012. I will be asking questions about the past and current location of those checklists and also about what happened to them.

Doc. 28-1 at 2-3 (subpoena) (footnote added); *see* doc. 29 at 11-13 (motion to compel). He asks the Court to order "as a matter of established fact[] that the subject checklists are missing," and to preclude the GDOC or any defendants from introducing evidence implying otherwise. Doc. 29 at 14. He also wants the GDOC to prepare a second designee who knows all security personnel working on the dates in question and "can testify

---

[4] An isolation checklist is a security log kept of inmates while they are held in protective custody. Doc. 28 at 5.

3

to topic areas numbers 1 & 2" of the subpoena. *Id.* Finally, he wants the GDOC to bear the expenses of the second deposition and to appear at his attorney's law office. *Id.*

During her deposition, Toby insisted that she investigated all three topics as best she could. Doc. 28 at 4-7. She reviewed several documents emailed to her, along with the incident report regarding Green's rape by Ricard, and she spoke with staff members who were listed on the incident report. *Id.* at 4. Specifically, she contacted Wayne Jordan, Torie Grubbs, and Sergeant Brad Westberry. *Id.* at 4-7. Grubbs was not very forthcoming, stating only that he remembered the incident "and something about it's an ongoing case." *Id.* at 7. Westberry stated that he did not recall the incident. *Id.* at 7. What Jordan knew is unclear since Green's attorney never questioned Toby about this. *See* doc. 28. Despite her efforts, Toby could not locate officer Benjamin Mourad because he no longer works at RSP. *Id.* In other words, her investigation was largely fruitless.

Toby also stated that she was unable to find out who actually transported Green to protective custody or who placed Ricard into her cell. *Id.* at 4. And although the GDOC provided Green with "isolation

checklists" from days before and after the incident, Toby could not find Ricard's or Green's checklists covering the night of the rape despite engaging additional prison personnel to help her search. *Id.* at 5-7. The GDOC records Toby did find only showed that Green alleged in a grievance that Grubbs put him in the cell. *Id.* at 5.

The missing isolation checklists are just that -- missing. The Court need not issue an "order" to that effect as Green requests. Nor will the Court infer nefarious conduct by the GDOC (such as destroying the checklists) absent evidence, which plaintiff fails to provide. In any case, "[a]bsolute perfection is not required of a 30(b)(6) witness. The mere fact that a designee could not answer every question on a certain topic does not necessarily mean that the [organization] failed to comply with its obligation." *See QBE Ins. Corp. v. Jorda Enters.*, 277 F.R.D. 676, 690 (S.D. Fla. 2012).

Here, the GDOC provided RSP's Deputy Warden of Security as its Rule 30(b)(6) deponent. She prepared for the deposition but uncovered little responsive information during her investigation. With less than a week's notice, doc 28-1 at 1, she conducted a reasonable investigation by interviewing Grubbs, Jordan, and Westberry, reviewing the available

5

documents on the incident, and making a good faith effort to locate Ricard's and Green's checklists. *See Wilson v. Lackner*, 228 F.R.D. 524, 528 (D. Md. 2005) (Rule 30(b)(6) does not require "absolute perfection in preparation," just "a good faith effort . . . to find out the relevant facts -- to collect information, review documents, and interview employees with personal knowledge"). Plaintiff, moreover, has not offered any persuasive reason to believe that forcing a second 30(b)(6) deposition would yield a different result.

The Court understands Green's frustration, but is not convinced that the GDOC "willfully obstructed discovery by providing a 30(b)(6) deponent who was *woefully under-prepared*" and thus failed to appear. Doc. 29 at 8, 13 (emphasis in original, boldface omitted). The Court therefore **DENIES** plaintiff's motion to compel the GDOC to provide a second 30(b)(6) deponent and to sanction the GDOC for failing to appear at its noticed deposition. Doc. 29. It also declines to enter an order precluding "any Defendants in this action from introducing evidence that even implies" that the security checklists exist. Doc. 29 at 14. Toby's responses are binding only upon the GDOC, not upon the named defendants. Moreover,

> [w]hen [an organization's] designee legitimately lacks the ability to answer relevant questions on listed topics and the [organization] cannot better prepare that witness or obtain an adequate substitute, then the "we-don't-know" response can be binding on the [organization] and prohibit it from offering evidence at trial on those points. Phrased differently, the lack of knowledge answer is itself an answer which will bind the [organization] at trial.

*QBE Ins. Corp.*, 277 F.R.D. at 690. If the GDOC attempts to provide testimony or evidence at trial which differs from the answers provided during Toby's deposition, plaintiff can object on that basis.

## II. RESPONSES TO REQUESTS FOR PRODUCTION

Plaintiff also moves to compel discovery responses from the GDOC. Doc. 30. He contends the GDOC has, without sufficient justification, failed to respond to eight requests for production.[5] Doc. 30.

In request 3, plaintiff seeks "[a]ll video surveillance that captures the image of Darius Ishun Green from the date Green entered [RSP] through the date that Green left [RSP]." Doc. 30 at 3. In its written objections, the GDOC argued that "production of any such videos, if they exist, is overly broad and unduly burdensome because it would require the viewing of every video depicting any area of [RSP] for a broad period

---

[5] Initially, he stated that the GDOC failed to respond adequately to ten separate discovery requests. Doc. 30 at 3-18 (requests 3, 5, 6, 7, 8, 9, 15, 16, 18, & 20). In his reply to the GDOC's response, however, he acknowledges that the GDOC has satisfied requests 5 and 18. Doc. 56 at 2-7.

7

of time." *Id.* at 4. Too, says the GDOC, request 3 "would depict areas of the prison and persons in the prison not relevant to this action." Doc. 48 at 6. Finally, it argues that Green "has failed to show how such video surveillance would lead to information that would prove his claim that the specific actions of the actual Defendants resulted in Plaintiff's alleged injuries." Doc. 48 at 6.

The Court agrees with the GDOC that this request is, in the main, overbroad and unduly burdensome, and, further, that Green has failed to explain how it would lead to admissible evidence. Doc. 48 at 6. Green spent years at RSP and was only one of hundreds of inmates at the facility. Assuming that the GDOC even kept all video images during a five-year period, locating all images of plaintiff while at RSP would require the GDOC to review literally tens of thousands of hours of tape in a fishing expedition for potentially incriminating footage.[6] Doc. 30 at 3. Much of the footage of Green -- *e.g.*, exercising, eating meals, walking from one place to another within RSP in, for example, 2009 -- also would undoubtedly be irrelevant to this case. Compounding the request's oppressive weight, Green offers nothing more than general argument

---

[6] For that matter, nothing in the record -- not evidence, not even an allegation -- indicates that the GDOC keeps video recordings for years on end. If such recordings do exist, Green's counsel may ask to conduct *his own review* of those tapes.

that the evidence "*may* depict some of the allegations made by Green in this matter." Doc. 30 at 4 (emphasis added). That's inadequate justification to compel a full response to request 3. *See Harrison v. Culliver*, 746 F.3d 1288, 1297 (11th Cir. 2014) (in light of its broad discretion to compel or deny discovery, district court did not err by denying inmate's motion to compel even though "the additional evidence [plaintiff] sought may have been relevant to his claims"); *McBride v. Rivers*, 170 F. App'x 648, 659-60 (11th Cir. 2006) (affirming district court's refusal to compel production of all grievances filed by inmates against individual defendants where prisoner plaintiff only "generally argu[ed] that th[e] evidence would have established defendant's subjective intent").

That said, any video depicting Green's move to protective custody on the night that Ricard raped him would (1) be relevant,[7] and (2)

---

[7] Fed. R. Civ. P. 26 provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*; *Avalon Risk Mgmt. Ins. Agency v. Taylor*, 2014 WL 808156 at * 3 (S.D. Fla. Feb. 28, 2014). "The standard for what constitutes relevant evidence [thus] is a low one." *United States v. Tinoco*, 304 F.3d 1088, 1120 (11th Cir. 2002). Even so, what is pled in the complaint drives the analysis. *Downing v. Billy Barnes Enters.*, 2013 WL 1857113 at * 3 (S.D. Ala. May 2, 2013). Here, Green pled specific facts about Ricard's sexual assault, including the date and circumstances surrounding it. *See* doc. 1 at 14-18, CV614-103.

reasonably accessible to the GDOC. He alleges that Lt. Grubbs directed John Doe to move him into a cell with Ricard the evening of September 21, 2012, and that Ricard raped him into the morning of September 22. Doc. 1 at 17-18, CV614-103. Assuming that cell is visible to a camera (and that the GDOC's retention policy and technological limitations have not combined to make video from nearly three years ago unavailable), locating a video made on a specific date should not impose an undue burden on the GDOC.

The GDOC states that it "does not *appear* that the [GDOC] has responsive items in its possession." Doc. 48 at 6 (emphasis added). That equivocation prevents the Court from ascertaining whether the GDOC made reasonable efforts to locate video of Green's transfer to protective custody. The Court therefore **GRANTS** in part and **DENIES** in part Green's motion to compel the production of video evidence in response to request 3. Doc. 30. The GDOC must produce all available video depicting Green's move to protective custody. If no such video exists, it must certify that it meaningfully reviewed the available video surveillance for images of Green's transfer to protective custody, yet found nothing relevant. In light of Green's inadequate justification and

the outsized review costs for a complete response to request 3, however, it need not conduct an exhaustive review of all video made while Green was housed at RSP.

Requests 6 through 8 pertain to "broken or malfunctioning" locks at RSP and security audits from October 1, 2007 through the time Green left RSP in late September 2012.[8] The GDOC has produced summaries of the security audits, doc. 48 at 7, but plaintiff insists those are inadequate. Doc. 56 at 3. According to Green, the GDOC should produce the full audits the summaries rely upon, in unredacted form, and should also produce any work orders showing whether locks were repaired or replaced. *Id.* The GDOC contends that any information about "malfunctioning locks" is irrelevant because the complaint only references "cell doors not secured," but never mentions or alleges anything about "malfunctioning locks." Doc. 48 at 8.

Whether or not it rises to the level of "semantical games," doc. 56,

---

[8] In request 6, plaintiff seeks "[a]ll documents, including security audits, notices, after action reports, letters, and emails (whether prepared by GDC employees or anyone else), referencing broken or malfunctioning locks at Rogers State Prison, or efforts to repair such locks at Rogers State Prison, dated from October 1, 2007 through the date that Darius Green left Rogers State Prison (late September 2012)." Doc. 30 at 5. Request 7 asks for "[a]ll documents pertaining to or referencing any and all security audits at Rogers State Prison" during the same period. *Id.* at 8. And in request 8, Green seeks "[a]ll grievances and complaints written by any officer or employee at Rogers State Prison" during the same time frame "regarding or referencing broken or malfunctioning locks at Rogers State Prison." *Id.* at 9.

at 4, the GDOC's distinction between "malfunctioning" and "not secure" is, for purposes of this motion, one without a difference. Plaintiff's claims are, at their core, about unsafe prison conditions and defendants' alleged deliberate indifference to the same. Specifically, he claims that RSP had chronic security issues and that defendants knew of those issues, yet did nothing. *See, e.g.*, doc. 1 at 11-12. If documents exist showing security issues (malfunctioning locks, etc.) with cells holding plaintiff or Ricard, they are indubitably relevant. Documents evidencing larger security concerns, like a wholesale breakdown in the prison's ability to lock *any* dormitories, also are relevant because they may show prison administrators' awareness of RSP's systemic security flaws. Put differently (and simply), the GDOC's relevancy objection to requests 6 through 8 lacks merit. Plaintiff's motion to compel production of documents responsive to those requests therefore is **GRANTED**. The GDOC must produce documents, including the security audits underlying the summaries already produced, responsive to requests 6 through 8. If the GDOC has security concerns about the production of specific audits, it can move for a protective order on those grounds.

Request 9 asks for "[a]ll grievances and complaints written by any officer or employee at [RSP]" from October 1, 2007 until plaintiff's release from RSP "regarding or referencing any security issue at [RSP]." Doc. 30 at 11. In its written responses to plaintiff's requests for production, the GDOC objected because the request (1) is overly broad and unduly burdensome by seeking information for a time frame greater than five years; (2) is unduly vague "in that it potentially includes any document written by any officer or employee of [RSP;]" (3) seeks irrelevant information; and (4) seeks information that would compromise the security of the RSP facility. Doc. 30 at 11. In its brief opposing Green's motion to compel, however, the GDOC simply states that "safety concerns"[9] is too broad a subject matter and thus not relevant to plaintiff's specific claims. Doc. 48 at 9.

The Court agrees that request 9 is overbroad. A prison's purpose is to securely house criminals, most of whom have no desire to be incarcerated. Issues with security are bound to arise. Many of those

---

[9] The GDOC's response brief mistakenly includes request 10, which concerns "safety issues," with its resistance to request 9, which addresses "security issues." Although the brief refers to "safety issues," the Court will treat that as encompassing "security," since the GDOC's response lumped request nos. 9 and 10 together without distinguishing the two. Moreover, any objection to request 10 is irrelevant since the motion to compel only involves request 9.

13

issues may well have nothing to do with the security issues that allegedly enabled Green's rape. Persistent issues with perimeter security, for instance, although an issue that could prompt complaints by corrections officers and thus arguably falls within request 9, have nothing to do with any of the alleged issues leading to Green's rape and so would be irrelevant to this case.

What is relevant, however, are "grievances and complaints written by" RSP officers and employees, doc. 30 at 11, that address issues like faulty locks, unescorted inmates being allowed in other inmate's cells, or other rapes. Moreover, reviewing RSP officer and employee complaints about security issues is not so burdensome, at least considering GDOC's representations to date. The Court therefore **GRANTS** in part the motion to compel. The GDOC must produce any RSP employee or officer complaints from the last five years that concern security issues implicated by plaintiff's claims, including (1) faulty locks; (2) free roaming inmates; (3) rapes and sexual assaults; and (4) issues with transportation to protective custody. It may omit all others.

Requests 15, 16, and 20 seek information about sexual assaults at

RSP during the time Green was housed there.[10] The GDOC created spreadsheets covering every reported sexual assault during that time period but did not identify whether the reporting inmates were transgendered or transsexual. Doc. 48 at 9-11. It represents that it has no way of knowing. Doc. 48-2 at 2-3. Plaintiff insists that the GDOC should identify transgender and transsexual inmates so that they may be deposed about their experiences while detained at RSP. Doc. 56 at 5-6. It also states that the GDOC has failed to provide incident reports that corresponded to the sexual assaults identified in the spreadsheet. *Id.*

The Court accepts that the GDOC has no way of sorting the reports based upon the victims' gender identity. Nor does Green show that the GDOC is lying or otherwise misleading him and this Court in its response. Hence, Green's motion to compel the GDOC to sort incidents based upon such characteristics is **DENIED**. Sexual incident reports generally, however, are highly relevant to plaintiff's claim, since they might help establish that RSP's administrators knowingly turned a blind eye to prison sexual assaults in general. That said, the reports no doubt

---

[10] In request 15, Green asks for "[a]ll complaints of sexual assault made by transgender inmates" at RSP during the time he was imprisoned there. Doc. 30 at 13. Request 16 ask for the same information with regards to transsexual inmates. *Id.* at 14. Request 20 asks for "[a] copy of all incident reports of any alleged or actual sexual assault made" while Green was at RSP. *Id.* at 17.

implicate both institutional security considerations and inmate privacy issues. Given those concerns, the Court **GRANTS** plaintiff's motion to compel their production, but the GDOC may redact them appropriately.[11]

### III. MOTIONS TO DEPOSE JOEL REID AND DARRYL RICARD

Green also moves to depose two prisoners, Joel Reid and Darryl Ricard, at their respective places of imprisonment. Docs. 40 & 42. Reid "provided a declaration in this case that bears on Plaintiff's claims," doc. 40 at 1, while Ricard is the alleged rapist. Doc. 42 at 2. In their joint status report, both parties stated they would move to depose incarcerated individuals, doc. 32 at 8, though defendants have yet to do so. Defendants also have failed to respond to plaintiff's motions for leave to depose, and so they stand unopposed. *See* L.R. 7.5 ("Failure to respond within the applicable time period shall indicate that there is no opposition to a motion."). Accordingly, the Court **GRANTS** both

---

[11] The GDOC must not over-redact here. Legitimate institutional security concerns should not become a catch-all excuse for turning relevant, discoverable documents into useless pieces of paper. Just as the GDOC may move for a protective order upon showing good cause, Green may move the Court for an Order directing the GDOC to release the identity of anyone identified in a particular report (*e.g.*, upon a showing that they likely will have information reasonably likely to lead to admissible evidence in this case). The parties are reminded, however, that they must first confer before burdening this Court with requests for additional judicial assistance. *See* Local Rule 26.5(c).

motions. Docs. 40 & 42.

## IV. CONCLUSION

The Court **DENIES** Green's motion to compel a second Rule 30(b)(6) witness and sanction the GDOC for failing to appear at the first deposition. Doc. 29. The consent motion for extension of time to respond, doc. 44, and both motions for leave to depose inmates, are **GRANTED**. Docs. 40 & 42.

Green's motion to compel the production of documents and other tangible items is **GRANTED** in part and **DENIED** in part. Doc. 30. In response to request 3, the GDOC must produce all videos depicting Green's move to protective custody on September 21, 2012, but nothing more. For requests 6 through 8, the GDOC must produce all responsive documents in its possession, custody, or control. For request 9, the GDOC must produce any officer or employee complaints about security issues related to Green's claims, including (1) faulty locks; (2) free roaming inmates; (3) rapes and sexual assaults; and (4) security issues arising from transportation to protective custody. Although the Court **DENIES** Green's request to compel the GDOC to sort its spreadsheet of reported sexual assaults by gender, it **GRANTS** his motion to compel

17

production of all incident reports responsive to request 20. Given security and privacy concerns, however, the GDOC may redact those reports to protect the identities of inmates involved and institutional security concerns (if necessary, plaintiff may move the Court for good-cause disclosure of same). The GDOC shall make all Court-ordered productions within 30 days of this Order. Finally, within 10 days of this Order, the parties shall confer and submit a status report to the Court proposing a new scheduling order that takes into account this Order's required productions, the two inmate depositions, and any other outstanding discovery.

**SO ORDERED** this 16TH day of July, 2015.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA